**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BLUE STAR EQUITY HOLDINGS, LLC AND MAGDY F. MAHMOUD,<br>*Plaintiffs,*<br>v.<br>ALL MEDICAL MANAGEMENT, LLC; BLUE STAR URGENT CARE, LLC; YEHUDA FINK; JOHN DOE (1-100); AND XYZ CORP. (1-100),<br>*Defendants.* | Civil Action No. 22-5215 (KSH) (LDW)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

This matter comes before the Court on the motion (D.E. 47) of defendants-counterclaim plaintiffs All Medical Management, LLC ("AMM"), Yehuda Fink ("Fink"), and Blue Star Urgent Care, LLC ("Urgent Care," and collectively with AMM and Fink, "defendants") for default judgment on their counterclaims against plaintiffs-counterclaim defendants Blue Star Equity Holdings, LLC ("Blue Star Equity") and Magdy Mahmoud ("Mahmoud," and with Blue Star Equity, "plaintiffs"). The dispute arises from the 2021 sale of an urgent care center from Blue Star Equity to AMM. Defendants' counterclaims allege that plaintiffs breached the governing contract and engaged in fraud and other tortious conduct.

## II. Background

The facts, as defendants have alleged them, are as follows. On May 12, 2021, Blue Star Equity and AMM entered into a contract, the Membership Interest Purchase Agreement ("Agreement"), whereby AMM purchased Blue Star Equity's membership interest in Urgent Care, which in turn owned and operated an urgent care facility on Straight Street in Paterson,

New Jersey (the "Facility"). (D.E. 2, Counterclaim ¶¶ 12, 14-15 & Ex. A (Agreement).) The purchase price was $600,000, with half due by the time of closing and the rest to be paid in monthly installments followed by a balloon payment. AMM paid the first half by the closing (which took place on July 21, 2021), and $80,000 of the remainder due, before discovering what it describes as Blue Star Equity's "material breach" of the non-compete/non-solicitation provision of the Agreement. (*Id.* ¶¶ 16-24.) That alleged breach was Mahmoud's involvement with another urgent care, as its "authorized official," in Paterson. (*Id.* ¶¶ 29-35.) AMM also contends that it was provided with an "incorrect and/or fraudulent lease for the Facility" that reflected a monthly rent of $3,000, when the real rent was $4,000 monthly plus "future escalation." (*Id.* ¶¶ 43-45.) Further, three third-party payor contracts that Blue Star Equity had represented to be in effect – for Amerigroup Medicaid HMO, Amerigroup Medicare Advantage, and Wellcare – did not exist. (*Id.* ¶¶ 49-51.)

On December 9, 2021, AMM sent Blue Star Equities and Mahmoud a cease-and-desist letter asserting that their involvement in the other Paterson urgent care breached the Agreement's non-compete and non-solicitation provision. (*Id.* ¶ 30 & Ex. B.) AMM got no response, and sent another letter on May 10, 2022, asserting that plaintiffs had continued to breach the non-compete/non-solicitation clause, and contending that they had provided a fraudulent facility lease. (*Id.* ¶¶ 40-41 & Ex. C.) The letter also advised that AMM would be offsetting the remaining amount due to plaintiffs against what it claimed was due to it as a result of plaintiffs' conduct.

Plaintiffs responded by suing defendants for not paying the remaining amount. The procedural background from that point forward was set forth in Magistrate Judge Wettre's July 18, 2024 report and recommendation (D.E. 40) addressing plaintiffs' failure to prosecute the case

they had initiated:

> Plaintiffs filed the complaint through counsel in the Superior Court of New Jersey, Passaic County on July 26, 2022, principally asserting claims for breach of a Membership Interest Purchase Agreement. (Compl., ECF No. 1). Defendants removed the case to this Court on August 24, 2022 and answered on August 31, 2022. Defendants also asserted nine counterclaims against defendants. The Court held an initial scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on October 31, 2022 and entered a Pretrial Scheduling Order setting various discovery deadlines. (ECF No. 12). The Court held periodic status conference[s] with the parties' counsel to monitor the progress of discovery and held an in-person settlement conference on November 20, 2023. Although the Court directed parties with immediate settlement authority to attend the settlement conference in person, (ECF No. 27), plaintiff Mahmoud did not appear at the Courthouse and belatedly participated by telephone. The settlement conference was not successful, and the parties continued with discovery.
>
> By letter dated February 23, 2024, plaintiffs' counsel informed the Court that his "firm has no authority to take any further action in this matter" and requested leave to withdraw. (ECF No. 32). Counsel served a copy of the request for leave to withdraw on plaintiffs by email, regular mail, and certified mail. (ECF No. 34). By Order dated March 18, 2024, the Court granted plaintiffs' counsel leave to withdraw, directed plaintiff Blue Star Equity Holdings, LLC to have substitute counsel enter an appearance on its behalf on or before April 15, 2024 because a corporate entity must be represented by counsel, and directed plaintiff Magdy F. Mahmoud to have substitute counsel enter an appearance on his behalf on or before April 15, 2024 or he would be deemed to be appearing *pro se*. (ECF No. 35). It appeared that plaintiffs' counsel failed to serve copies of the Order granting withdrawal on plaintiffs, so the Court entered an Order dated April 26, 2024 directing former counsel to file proof of service, extending the deadline for plaintiffs to appear by new counsel to June 3, 2024, and scheduling a telephone conference on June 11, 2024. (ECF No. 36). Former counsel filed a certification of service indicating that he served plaintiffs with copies of the Court's March 18, 2024 and April 26, 2024 Orders by email, regular mail, and certified mail on May 20, 2024. (ECF No. 37). No new counsel has appeared on behalf of either plaintiff. No one appeared at the June 1, 2024 telephone conference on behalf of plaintiffs. The Court then issued an Order to Show Cause why: (1) plaintiff Mahmoud's claims should not be dismissed for failure to prosecute and default entered against him on defendants' counterclaims; and (2) plaintiff Blue Star Equity Holdings, LLC's claims should not be dismissed and default entered against it on defendants' counterclaims for failure to appear by counsel. (ECF No. 38). The Court directed plaintiffs to appear in-person before the undersigned on July 16, 2024 for a show cause hearing. (*Id.*). The Clerk of Court served copies of the Order to Show Cause on plaintiffs at the last known address provided by their former counsel. Plaintiffs did not appear at the show cause hearing. The Court has received no correspondence from either plaintiff indicating their continued

interest in pursuing this action.

(D.E. 40, Report & Recommendation, at 1-3 (footnote omitted)).

Judge Wettre recommended that plaintiffs' complaint be stricken for failure to prosecute and failure to comply with Court orders, pursuant to Fed. R. Civ. P. 16(f)(1), 37(b)(2), and 41(b) and *Poulis v. State Farm Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). No party objected to the report and recommendation, and upon review, this Court adopted it, dismissed plaintiffs' complaint, struck plaintiffs' answer to defendants' counterclaims, and set a deadline for defendants to seek entry of default and default judgment on their counterclaims. (D.E. 41.) Defendants missed their deadline several times, and only after the Court warned that the counterclaims would be dismissed did they move for default judgment. (D.E. 45, 46, 47.)

Defendants' motion is supported by a brief (D.E. 47-6, Moving Br.), a certification of counsel (D.E. 47-1, Levenson Cert.), and the certification of individual defendant Fink, with exhibits (D.E. 47-2, Fink Cert.). They seek judgment in the amount of $2,867,613, plus attorneys' fees and costs.

**III. Legal Standard**

The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who does not file a timely responsive pleading. *Trs. of Int'l Union of Painters v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 441 (D.N.J. 2024) (Bumb, J.). Whether to grant default judgment is a matter of the Court's discretion, recognizing that cases are to be decided on the merits "whenever practicable." *Id.* (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984)).

To grant the requested relief, "a court must be satisfied that: (1) it has jurisdiction, both subject matter and personal, over the case and defaulting party, and service of process was

proper, (2) the party seeking judgment presented 'a legitimate cause of action,' and (3) entering default judgment would be 'proper.'" *Id.* (quoting *Chanel, Inc. v. Matos*, 133 F. Supp.3d 678, 683-84 (D.N.J. 2015)). The last factor, in turn, assesses "(1) prejudice to the [moving party] if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).

In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint (here, the counterclaim) as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008) (Kugler, J.). *Id.* at 535-36 (citations omitted). As to damages, the court "must determine the amount if it is not for 'a sum certain or a sum that can be made certain by computation.'" *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 161 (3d Cir. 2022) (quoting Fed. R. Civ. P. 55(b)). That determination is made using applicable substantive law, including as to the burden and quantum of proof. *See id.*

## IV. Analysis

The preliminary requirements are met. This case was filed and initially litigated by the plaintiffs, who answered the counterclaims with no challenges to jurisdiction or service; personal jurisdiction and service therefore are not in issue. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019); *Altice USA, Inc. v. New Jersey Bd. of Pub. Utilities*, 2020 WL 1151045, at *3 (D.N.J. Mar. 10, 2020) (Martinotti, J.). Regarding subject matter jurisdiction, the case is appropriately here on diversity grounds.

Next is whether the "undisputed facts of [defendants' counterclaims] allege legitimate claims." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) (Simandle, J.). Defendants seek judgment on a subset of their counterclaims: Count I, which asserts that Blue Star Equity breached its contract with AMM by "engaging in an activity competitive to AMM's operation of the Facility" (Compl. ¶ 62); Count II, which asserts that Blue Star Equity breached the same contract by "misrepresenting the monthly rent for the Facility" and by "misrepresenting that the contracts with [three payors] were in full force and effect" (*id.* ¶¶ 68-69); and Count V, which seeks to pierce the corporate veil with respect to Blue Star Equity to hold Mahmoud liable. Defendants also seek attorneys' fees, citing an indemnification provision in the contract between Blue Star Equity and AMM. Although the motion does not specify, the reference appears to be to Count IX of the counterclaims.[1]

A breach of contract claim requires the following: (1) a contract; (2) the complaining party did what it was required to do under the contract; (3) the other party did not; and (4) this failure caused the complaining party to suffer a loss. *Goldfarb v. Solimine*, 245 N.J. 326, 338 (2021) (quoting *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)).[2] Assuming the truth of

---

[1] Defendants do not pursue judgment on the remaining counterclaims: Count III, alleging unjust enrichment of both plaintiffs; Count IV, for breach of the implied covenant of good faith and fair dealing by Blue Star Equity; Count VI, for common law fraud by both plaintiffs; Count VII, for fraudulent misrepresentation by both plaintiffs; and Count VIII, for negligent misrepresentation by both plaintiffs. Those claims are therefore dismissed.

[2] New Jersey law applies to defendants' substantive claims. *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law and federal procedural law.").

defendants' factual allegations, AMM—and only AMM[3]—has sufficiently alleged claims for breach of contract.

Addressing Count I, the Agreement prohibits Blue Star Equity from, for two years after the July 21, 2021 closing,[4] allowing any of its "Affiliates" to, "anywhere in the Restricted Area, engage in an activity competitive to the Business, or own any interest in, manage, control, participate in (whether as an owner, operator, manager, officer, director, employee, investor, agent, representative, or otherwise), an entity that is competitive to the Business." (Agreement ¶ 17(a).) The opening paragraphs define the "Business" as the operation of the urgent care facility being sold to AMM (Agreement, at 1), the "Restricted Area" is the Paterson, New Jersey (*id.* ¶ 17(e)). "Affiliates" includes anyone controlling Blue Star Equity, meaning anyone having the "power to direct [its] management and policies . . . , though the ownership of voting securities, Contract or otherwise," and Mahmoud is described in the Agreement as Blue Star Equity's managing member and in the pleadings as its CEO (in which capacity he also signed the Agreement). (*Id.* ¶¶ 1, 17(c); D.E. 2, Defts.' Ans. & Counterclaims, at 6 ¶ 14.) Despite this prohibition, AMM alleges, Mahmoud was the authorized official and/or owner of a competing urgent care facility in Paterson within six months of the closing, and AMM's facility lost patients as a result. (D.E. 2, Defts.' Ans. & Counterclaims, at 38 ¶¶ 29, 31, 38.)

Turning to Count II, paragraph 3(f) contains a representation by Blue Star Equity to AMM that all the contracts of Blue Star Urgent Care (the company AMM was buying), including contracts with third party payors, were "in full force and effect," and that the attached Schedule 3(f) listed the contracts. (Agreement ¶ 3(f) & Sch. 3(f).) Schedule 3(f) listed, under "Payor

---

[3] Defendants have not articulated any factual or legal basis whereby Fink or Urgent Care would be entitled to judgment for Blue Star Equity's breach of a contract between it and AMM.

[4] (*See* D.E. 2, Defts.' Ans. & Counterclaims, at 36 ¶ 16.)

Contracts," 15 different names, including Amerigroup Medicaid HMO, Amerigroup Medicare Advantage, and Wellcare. (Agreement, Sch. 3(f).) According to AMM, there were, in fact, no contracts with these payors, in contravention of Blue Star Equity's representation, resulting in monetary loss to AMM. (D.E. 2, Defts' Ans. & Counterclaims, at 40 ¶¶ 51, 53.)

Paragraph 3(f) also includes Blue Star Equity's representation that it had provided AMM with all contracts, including leases, and that all provided contracts "are in full force and effect." According to AMM, however, the lease Blue Star Equity provided to it was necessarily not in effect, because it stated that the facility rent was $3,000 monthly, while the actual rent turned out to be $4,000 monthly, with future increases, with loss to AMM in the amount of the rent differential. (D.E. 2, Defts.' Ans. & Counterclaims, at 40 ¶¶ 43-45.)

The foregoing allegations, taken as true at this default judgment stage, suffice to render Blue Star Equity liable for breach of contract on Counts I and II of the counterclaims. But allegations (which is what AMM relies on – complaint allegations and declarations that repeat them without elaboration) are not enough to award the damages AMM seeks. *PPG*, 47 F.4th at 161 ("When a district court enters a default judgment, 'the factual allegations of the complaint, *except those relating to the amount of damages*, will be taken as true.'" (citations omitted)).

AMM has not substantiated or even explained how it came to the requested amounts for two of the three breaches, namely that the non-compete violation inflicted damages of "not less than" $100,000 per month for the entire two-year period (despite Mahmoud allegedly transferring his interest after receiving AMM's first cease-and-desist letter) "based on reduced patient flow," such that it is due $2,400,000 (D.E. 2, Defts.' Ans. & Counterclaims, at 38 ¶¶ 31, 38-39), and that the absence of the three identified payor contracts resulted in $53,700 in damages (*see id.* at 40 ¶ 53). And although it offers a calculation for the lease-related breach, it

does not supply evidentiary support. Under New Jersey law, it is a plaintiff's burden to prove damages for breach of contract, and to do so by a preponderance of the evidence and with a method appropriate to the situation. *See, e.g.*, *Goldfarb*, 245 N.J. at 339; *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 191 N.J. 1, 12-15 (2007); *Matter of Gloria T. Mann Revocable Tr.*, 468 N.J. Super. 160, 177 (App. Div. 2021).

Count V, which seeks to hold Mahmoud liable under a veil-piercing theory, offers conclusory legal statements, not factual allegations, and as such AMM has not presently presented a legitimate claim for this relief. (D.E. 2, Defts.' Ans. & Counterclaims, at 44 ¶¶ 91-94.) *Cf. Brown-Hill Morgan, LLC v. Lehrer*, 2010 WL 3184340, at *11-12 (App. Div. Aug. 12, 2010) (affirming application of doctrine to scenario involving LLC, and noting that "inquiry is fact specific," with variety of factors to be considered).

AMM also seeks attorneys' fees as a matter of contract. *See Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 385 (2009) (stating that although New Jersey disfavors the shifting of attorneys' fees, prevailing party may recover them if a statute, court rule, or contract provides for fee shifting). It has not offered any analysis or discussion, an amount, or supporting documentation. *Cf.*, *e.g.*, *id.* at 385-88; *Walker v. Giuffre*, 209 N.J. 124 (2012).

Summing up, AMM asserted a legitimate cause of action insofar as liability on Counts I and II is concerned but has not done so with the remainder of the counts on which it has moved. As discussed below, it will be afforded an opportunity to file a supplemental submission addressing these deficiencies.

Finally, the last part of the default judgment analysis asks whether judgment would be proper, which is evaluated by the *Chamberlain* factors: prejudice to AMM absent default judgment; whether Blue Star Equity or Mahmoud have a litigable defense; and whether their

delay is due to culpable conduct. *See Leo Constructing, LLC*, 718 F. Supp. 3d at 441 (citing *Chamberlain*, 210 F.3d at 164. Absent the judgment sought, AMM has no recourse to protect its interests or to recover what it lost; its informal, pre-litigation efforts at resolution came to naught. There is no apparent litigable defense, with one limited exception that AMM must address in its supplemental submission: whether any of the damages assertedly owed by Blue Star Equity are subject to offset, in view of AMM's conceded withholding of certain amounts based on Blue Star Equity's asserted breaches (a topic also covered in the Agreement, *see* ¶ 2(c)). Last, Blue Star Equity's (and Mahmoud's ) delays cannot be viewed as anything other than culpable—despite themselves initiating this action, they chose, despite multiple warnings and the loss of the ability to pursue their own claims, to cease participating.

**V. Conclusion**

For the foregoing reasons, the Court grants the motion in part and denies it in part. Within 14 days, defendants may file a supplemental submission addressing the deficiencies in their motion. An appropriate order will follow.

s/ Katharine S. Hayden
Date: September 15, 2025 Katharine S. Hayden, U.S.D.J